UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL KEENEY,

Plaintiff,

Case # 16-CV-167-FPG

v.

DECISION AND ORDER

PATRICIA BRINKMAN,

Defendant.

## INTRODUCTION

Plaintiff Michael Keeney brings this action against Defendant Patricia Brinkman, in her individual and official capacities, for alleged violations of the First Amendment (pursued under 42 U.S.C. § 1983) and Article I, § 8 of the New York State Constitution. *See* ECF No. 1.

Plaintiff filed his Complaint on February 23, 2016. ECF No. 1. On May 5, 2016, Defendant Brinkman filed her Answer, ECF No. 11, and then-defendants Joseph Woodward and Housing Options Made Easy, Inc. ("HOME") filed their joint Answer, ECF No. 12. The next day, Defendant Brinkman filed an Amended Answer. ECF No. 13. On March 2, 2017, the Court issued a Stipulation and Order dismissing the claims against then-defendants Mr. Woodward and HOME with prejudice, ECF No. 21, pursuant to the agreement of the parties, ECF No. 20. Defendant Brinkman—the only remaining defendant—filed a Motion for Summary Judgment on August 14, 2017. ECF No. 23. Plaintiff submitted a Memorandum in Opposition on October 16, 2017, ECF No. 26, and Defendant Brinkman filed her Reply on November 2, 2017, ECF No. 27.

For the reasons that follow, Defendant Brinkman's Motion for Summary Judgment (ECF No. 23) is GRANTED, and this action is DISMISSED.

# BACKGROUND[1]

Plaintiff was formerly employed by HOME, "a peer-run organization that provides supportive housing and other recovery, transitional[,] and reintegration programs and services for individuals with serious, persistent mental health issues." ECF No. 23-1, at 2. HOME receives funding through annual contracts with Chautauqua County's Department of Mental Hygiene, which acts as a conduit for state funds. Plaintiff worked as a Peer Specialist for HOME's Mobile Transition Team in Chautauqua County from April 21, 2015 until September 8, 2015, when his employment was terminated. Plaintiff alleges that he was fired at the behest of Defendant Brinkman, the Chautauqua County Director of Mental Hygiene Services. Per Plaintiff's account, Defendant Brinkman ordered his termination based on Plaintiff's public criticism of Chautauqua County's response to its "drug epidemic." ECF No. 23-1, at 4.

Chautauqua County has facilitated a number of "drug forums" to address its "growing opioid epidemic." *Id.* Members of the public were invited to speak at these forums, and Plaintiff claims that he spoke at forums held on March 12, 2014, September 1, 2014, and March 16, 2015.[2] At the March 16, 2015 forum, Plaintiff allegedly "criticized the lack of services provided in Chautauqua County related to the drug epidemic." *Id.* at 5.

The next month—on April 21, 2015—Plaintiff was hired by HOME as an at-will employee. As part of the hiring process, Plaintiff interviewed with Mr. Woodward, HOME's then-CEO, and Denis Bouchard, HOME's COO. After approximately one week, Defendant Brinkman learned of Plaintiff's hiring and that he had "spoken very angrily about the lack of services in the community

---

[1] The following facts are drawn from the Local Rule 56(a) statements, affidavits, deposition testimony, and documents submitted in connection with Defendant Brinkman's Motion for Summary Judgment (ECF No. 23) and Plaintiff's response in opposition (ECF No. 26). All facts are undisputed unless noted otherwise.

[2] Plaintiff also maintains that "he spoke publicly about the [drug] issue in a documentary and newspaper article for which he was interviewed." ECF No. 23-1, at 5.

and inadequacy of the services that existed." *Id.* at 6. Upon receiving that information, Defendant Brinkman called Mr. Woodward. While the parties dispute the substance of this conversation, they agree that it related to the propriety of Plaintiff serving as a Peer Specialist, given his perception of Chautauqua County's services. After that call, Mr. Woodward spoke to Richard Huber, a then-member of HOME's Board of Directors. On May 5, 2015, Defendant Brinkman called Mr. Woodward a second time to "follow up to their first phone call." *Id.* at 7. Once again, the parties dispute the substance of the second conversation between Mr. Woodward and Defendant Brinkman, but they agree on the broad contours: among other things, it again involved Plaintiff's capacity to serve as a Peer Specialist. Approximately four months later—on September 8, 2015—Plaintiff was fired from his position with HOME.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must take genuinely disputed facts in the light most favorable to the nonmovant—here, Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). If, based on the admissible evidence, a reasonable jury could return a verdict in favor of the nonmovant, summary judgment is not appropriate. *E.g.*, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545–46 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). In deciding whether to grant summary judgment, the Court must resolve "all permissible inferences and credibility questions . . . in favor of [the nonmovant]." *Id.* That assessment requires the Court to "disregard all evidence favorable to the [movant] that the jury is not required to believe." *Id.* at 545 (quoting *Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009)) (emphasis omitted).

"The [movant] bears the initial burden of showing why it is entitled to summary judgment."

*Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Where the [movant] would not "bear[] the burden of proof at trial," it "may show its prima facie entitlement to summary judgment" by "point[ing] to evidence that negates its opponent's claims or . . . [by] identify[ing] those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." *Id.* at 272–73. The latter approach "requires identifying evidentiary insufficiency"—"not simply denying the opponent's pleadings." *Id.* at 273.

If the movant shows that it is entitled to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Id.* "Like the movant, the nonmovant cannot" simply rely "on allegations in the pleadings"—it "must point to specific evidence in the record to carry its burden on summary judgment." *Id.* If the nonmovant fails to set forth admissible evidence to support an essential element of its claim, then summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

## DISCUSSION

## I.    First Amendment

Plaintiff brings his First Amendment claim pursuant to 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 does not create any substantive rights; rather, it serves as a vehicle "for vindicating federal rights elsewhere conferred." *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 133 n.3 (1979)). Plaintiff invokes § 1983 to claim that Defendant Brinkman violated his First Amendment rights. *See* ECF No. 1.

To successfully assert a constitutional claim under § 1983—in addition to showing the underlying violation alleged—a plaintiff must demonstrate state action. *See, e.g.*, *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257–58 (2d Cir. 2008). Moreover, the claimed state involvement must be "with the activity that caused the injury" at issue, not just with "some activity of the institution alleged to have inflicted [the] injury." *Id.* (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)) (emphases omitted). In that vein, the relevant inquiry looks to "the specific conduct of which the plaintiff complains." *E.g.*, *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). To attribute the actions of a private entity to the state, a plaintiff bringing a § 1983 claim must demonstrate one of the following:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) . . . the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) . . . the entity "has been delegated a public function by the [s]tate[]" ("the public function test").

*Sybalski*, 546 F.3d at 257 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)) (alterations in original); *see also, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1003–05 (1982) (discussing the tests' applicability to lawsuits "seek[ing] to hold state officials liable for the actions of private parties").

Here, the complained-of action is Plaintiff's termination from HOME. *See* ECF No. 1, at 3 ("Having been terminated because of his protected speech under color of law, the Defendants

have violated the Constitution and §1983."). Defendant maintains that "Plaintiff has presented no admissible evidence of retaliatory conduct under color of state law." *E.g.*, ECF No. 23-4, at 9. In his response, Plaintiff does not address the admissibility of his evidence or the applicable law governing state action. Rather, he simply quotes Mr. Huber's deposition testimony and argues that the testimony of Defendant Brinkman and Mr. Woodward should be disregarded. *See* ECF No. 26, at 9–10. In her reply, Defendant Brinkman argues why the evidence Plaintiff cites—the specified portions of Mr. Huber's testimony—is largely inadmissible. *See* ECF No. 27, at 3–7. At this stage, the Court looks to determine whether, taking the admissible evidence in the light most favorable to Plaintiff, HOME's termination of Plaintiff's employment could be fairly attributed to the state. *See, e.g.*, *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014).

## A.     The Compulsion Test

Under the compulsion test, if the private "entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state," its private action is attributable to the state. *See Sybalski*, 546 F.3d at 257 (quoting *Brentwood*, 531 U.S. at 296). Thus, for the state to be held responsible, it must have "exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate." *Blum*, 457 U.S. at 1004. As a result, "[a]ction taken by private entities with the mere approval or acquiescence of the [s]tate is not state action." *Id.* (quoting *Sullivan*, 526 U.S. at 52).

Plaintiff alleges that Defendant Brinkman "used her authority over funding to [HOME] as a threat to demand Plaintiff's termination because of his protected speech," ECF No. 26, at 2, but he cites no admissible evidence to support that contention. Plaintiff points only to Mr. Huber's testimony,[3] which describes the phone calls between Mr. Woodward and Defendant Brinkman—

---

[3] In his Rule 56 opposing statement of facts, Plaintiff also quotes Defendant Brinkman's Rule 56 statement to note her alleged expression of concern to Mr. Woodward about Chautauqua County's lack of involvement in the hiring process,

yet that account consists almost entirely of inadmissible hearsay. The only remaining defendant in this action is Defendant Brinkman. Taken in isolation, her purported statements from the phone calls could be offered against her as nonhearsay, *see* Fed. R. Evid. 801(d)(2)(A), but—fatally for Plaintiff—his account of those statements is introduced in layers: Mr. Huber claims that Mr. Woodward told him what Defendant Brinkman said over the phone. To be admissible, each statement in that chain of communication must be either nonhearsay or fall within an exception to the rule against hearsay. *See* Fed. R. Evid. 805. As a result, Defendant Brinkman's alleged statements are blocked from admission by the subsequent layer of inadmissible hearsay that is Mr. Woodward's recollection of those statements to Mr. Huber.

Indeed, Plaintiff fails to argue how those statements might be admissible, nor can the Court discern a path for their admission. To the extent Plaintiff might attempt to characterize the statements as falling within the state-of-mind exception, *see* Fed. R. Evid. 803(3), it would be to no avail—that exception does "not includ[e] a statement of memory or belief to prove the fact remembered or believed," *id.* Mr. Woodward's recollection of Defendant Brinkman's statements to Mr. Huber would serve just that function: to prove that the "threatening" statements were made by Defendant Brinkman. That sort of evidentiary workaround is not permitted. *See, e.g.*, *Bell v. Constr. & Gen. Bldg. Laborers' Local 79*, No. 04 Civ. 6520(RJH), 2011 WL 3796355, at *3 (S.D.N.Y. Aug. 24, 2011); *see also* Fed. R. Evid. 803(3) advisory committee's note. Accordingly, no reasonable jury could conclude that Plaintiff has demonstrated state action through the compulsion test.

---

as compared to another county. *See* ECF No. 26-1, at 2–3, 9. To be admissible as nonhearsay, Defendant Brinkman's actual statements to Mr. Woodward—only summarized in her Rule 56 statement—would need to be offered against her, not introduced by her. *See* Fed. R. Evid. 801(d)(2)(A). But Plaintiff treats Defendant Brinkman's *Rule 56 statement* as the probative evidence—he does not cite any actual testimony to be offered against Defendant Brinkman. *See* ECF No. 26-1, at 2–3 ("Defendant's own Rule 56 statement supports this [contention] when proper account is taken of Defendant's euphemisms [in her Rule 56 statement.]").

## B.    The Joint Action Test

Under the joint action test, if "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies," the private entity's action is attributable to the state. *See Sybalski*, 546 F.3d at 257 (quoting *Brentwood*, 531 U.S. at 296). Such showings demonstrate "a sufficiently close nexus between the [s]tate and the challenged action of the regulated entity," such that "the action . . . may be fairly treated as that of the [s]tate itself." *Blum*, 457 U.S. at 1004 (quoting *Jackson*, 419 U.S. at 351). At base, they ensure "that constitutional standards are invoked only when it can be said that the [s]tate is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (noting "[t]he importance of this assurance . . . when[] . . . the complaining party seeks to hold the [s]tate liable for the actions of private parties"). Accordingly, "[a] finding of state action may not be premised solely on the private entity's creation, funding, licensing, or regulation by the government." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003).

None of the admissible evidence proffered permits the inference of joint action. Any claim of significant encouragement fails for the reasons discussed *supra*—Plaintiff provides no admissible evidence to support his account of the conversations between Mr. Woodward and Defendant Brinkman. Moreover, for HOME to have been "a willful participant in joint activity with" Defendant Brinkman when Plaintiff was terminated, the two would have needed to "share some common goal to violate . . . [P]laintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). Plaintiff points to no admissible evidence to support the notion that anyone agreed to violate his First Amendment rights—conversely, he focuses on purported coercion by Defendant Brinkman.  Nor does Plaintiff demonstrate that HOME and the State were "entwined" beyond

HOME's basic funding structure, which is insufficient. Accordingly, no reasonable jury could conclude that Plaintiff has demonstrated state action through the joint action test.

### C. The Public Function Test

Under the public function test, if the private entity "has been delegated a public function by the [s]tate," its private action is attributable to the state. *See Sybalski*, 546 F.3d at 257 (quoting *Brentwood*, 531 U.S. at 296) (alteration in original). If a private entity exercises "functions that were traditionally under the exclusive authority of the state," then its actions can be properly attributed to the state. *See id.* at 259.

In this case, the relevant action is Plaintiff's termination. Thus, the actual services rendered by HOME are not determinative—rather, the pertinent activity is HOME's decisionmaking with respect to employment. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) (determining that, even if the defendant's provision of services constituted state action, "that fact does not make the [defendant] a state actor with respect to its employment decisions"); *see also Faddis-DeCerbo v. Astor Servs. for Children & Families*, 500 F. App'x 46, 47 (2d Cir. 2012) (summary order) ("We need not decide whether [the] defendant-appellee . . . a private not-for-profit organization, engages in state action when it provides mental health, welfare, and development services to children in its community. [The] [p]laintiffs-appellants have failed to put forth any evidence that [the defendant-appellee] acted under color of state law for purposes of § 1983 when it decided to fire them."). In firing Plaintiff, HOME did not exercise a power traditionally committed to the exclusive authority of the state—it simply made an employment decision. *See Sherlock*, 84 F.3d at 527; *see also Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 267 (2d Cir. 2014) ("[T]he gravamen of [the plaintiff's] claims deals not with the performance of . . . ambulance services but instead with [the defendant's] employment

decision to charge and suspend her."); *Faddis-DeCerbo*, 500 F. App'x at 47. Accordingly, no reasonable jury could conclude that Plaintiff has demonstrated state action through the public function test.

In sum, Plaintiff's failure to point to admissible evidence to support his account of Defendant Brinkman's statements leaves him only with the undisputed facts and allegations in his pleadings—neither of which presents a genuine dispute of material fact, and neither of which would permit a reasonable jury to find the state-action element required by § 1983 satisfied. As a result, Plaintiff's First Amendment claim cannot survive, and summary judgment is GRANTED in favor of Defendant Brinkman.

## II.     New York State Constitution

Plaintiff also asserts an alleged violation of Article I, § 8 of the New York State Constitution. *See* ECF No. 1. However, because Plaintiff's federal claim does not withstand summary judgment, the Court declines to exercise supplemental jurisdiction over this remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (observing that, "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (alteration in original))). In balancing the factors of "judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350, the Court notes that this is the first and only dispositive motion on which the Court has issued a decision, and it is being resolved at the pretrial stage. The Court also observes that, in granting summary judgment on Plaintiff's First Amendment claim, it was not required to reach the substance of that claim, given Plaintiff's failure to demonstrate state action for the purposes of § 1983. *See, e.g.*, *N.Y. Mercantile Exch. v.*

*Intercont'lExch., Inc.*, 389 F. Supp. 2d 527, 547 (S.D.N.Y. 2005) ("It is particularly appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims because they raise issues of fact that are unnecessary to resolve for purposes of deciding the federal claims."), *aff'd*, 497 F.3d 109 (2d Cir. 2007). Accordingly, the Court declines to exercise supplemental jurisdiction over this state-law claim.

## CONCLUSION

For the reasons stated, Defendant Brinkman's Motion for Summary Judgment (ECF No. 23) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED. Given the dismissal of Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim, which is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 30, 2018
     Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court